UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KANG JIN,<br><br>                    Plaintiff,<br><br>         v.<br><br>KILOLO KIJAKAZI,<br><br>                    Defendant. | Case No.  21-cv-00379-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REVERSING DENIAL OF BENEFITS, REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>[Re:  ECF Nos. 23, 32] |

Plaintiff Kang Jin appeals a final decision of Defendant Kilolo Kijakazi, Commissioner of Social Security, denying his application for supplemental social security income ("SSI") under Title XVI of the Social Security Act.  Jin asks the Court to reverse the Commissioner's decision and remand for payment of benefits or, in the alternative, for further administrative proceedings.  The parties' cross-motions for summary judgment have been fully briefed, and the matter has been submitted without oral argument pursuant to Civil Local Rule 16-5.  *See* ECF Nos. 23 ("PMSJ"), 32 ("DMSJ"), 36 ("PReply").  For the reasons discussed below, the Court GRANTS IN PART and DENIED IN PART Jin's motion and DENIES the Commissioner's motion.  The Court will reverse the denial of benefits and remand for further administrative proceedings.

**I.     BACKGROUND**

Jin was born on December 23, 1953 in China.  AR164, 276.[1]  Jin is a mostly monolingual

---

[1] All citations to "AR" refer to the Administrative Record filed at ECF No. 18.  The Court uses the

1  Mandarin speaker who earned a bachelor's degree in Chinese Studies from San Francisco State
2  University. AR169, 276–77. Jin reported that he had past unskilled work as a mail handler,
3  kitchen helper, custodian, and busboy, but he has never worked in his academic field or performed
4  skilled work. AR169, 276–77. Jin filed a protective application for SSI on May 28, 2015,
5  claiming a disability onset date of December 5, 2012. AR392. He claims disability due to mixed
6  hyperlipidemia; type 2 diabetes mellitus; hypercholesterolemia; shingles; herpes zoster; and
7  mental impairment. AR395.

Jin's application was denied initially on July 31, 2015, and upon reconsideration on December 5, 2015. AR72–75, 76–83. A hearing before an administrative law judge ("ALJ") was held on December 19, 2017. AR32–55. The ALJ denied the claim on January 9, 2018 on the basis that Jin had no severe impairments at step two of the analysis. AR18–31. The Appeals Council denied review. AR1–6.

Thereafter, Jin filed a lawsuit in this district against the Commissioner, challenging the denial of benefits. AR446–55. Judge Westmore granted Jin's motion for summary judgment, denied the Commissioner's motion for summary judgment, reversed the denial of benefits, and remanded for further proceedings. *Jin v. Berryhill*, 2020 WL 999795, at *3 (N.D. Cal. Mar. 2, 2020). Judge Westmore found that the ALJ improperly weighed evidence at step two of the analysis, which was only a "de minimus screening device to dispose of groundless claims." *Id.* at *2. Jin had made the required "minimum showing of severity" at step two for his physical and mental limitations, so the ALJ should have progressed to step three of the analysis. *Id.* at *2–3.

On remand, the ALJ held another hearing in September 2020. AR406–45. The ALJ again denied Jin's claim. AR392–405. This lawsuit followed.

## II. LEGAL STANDARD

### A. Standard of Review

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

_____

page numbers in the bottom right corner.

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *See id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *See Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

### B.    Standard for Determining Disability

A claimant seeking SSI under Title XVI must establish disability between the date of the application for benefits and the date of the ALJ's decision. *See Deckard v. Saul*, 2020 WL 1157026, at *2 (N.D. Cal. Mar. 10, 2020) (citing *Sophie Jean P. v. Comm'r of Soc. Sec.*, 2019 WL 6749415, at *2 (D. Or. Dec. 11, 2019)).

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining:  (1) whether the claimant is doing substantial gainful activity;

3

1  (2) whether the claimant has a severe medically determinable physical or mental impairment or
2  combination of impairments that has lasted for more than 12 months; (3) whether the impairment
3  meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual
4  functional capacity, the claimant can still do his or her past relevant work; and (5) whether the
5  claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th
6  Cir. 2014) (internal quotation marks and citations omitted).  The residual functional capacity
7  ("RFC") referenced at step four is what a claimant can still do despite his or her limitations.  *Id.* at
8  1160 n.5.  "The burden of proof is on the claimant at steps one through four, but shifts to the
9  Commissioner at step five."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir.
10 2009).

## III. DISCUSSION

The Court first summarizes the ALJ's determinations at each step of the sequential analysis.  The Court then discusses Jin's challenges to the ALJ's determinations.

### A. ALJ's Determinations

At step one, the ALJ determined that Jin had not engaged in substantial gainful activity since May 28, 2015, his application date.  AR395.

At step two, the ALJ determined that Jin had the following severe impairments:  "mixed hyperlipidemia, type 2 diabetes mellitus; and hypercholesterolemia."  AR395.  The ALJ found that Jin alleged disability due to shingles and herpes zoster, but found that these conditions were not severe because there were "no significant treatment notes for these conditions and no evidence to suggest debilitating pain."  *Id.*  The ALJ also noted that one of the examining doctors mentioned "probable very mild peripheral polyneuropathy," but found that the condition was "not [a] medically determinable impairment" because the treating notes in the record were "devoid of such diagnosis."  *Id.*

The ALJ then found that Jin's claimed mental impairment was nonsevere because it "d[id] not cause more than minimal limitation in [his] ability to perform basic mental work activities." AR395.  First, the ALJ stated that Jin "did not allege mental impairments initially in his application nor at the reconsideration level."  *Id.*  The ALJ then nevertheless evaluated the four

areas of mental functioning from the relevant regulations (the "paragraph B" criteria) and found Jin had "mild limitation in understanding, remembering, or applying information in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself." *Id.* The ALJ noted that although in 2008 Jin was placed "on a 5150 psychiatric hold due to sending an email threatening to shoot teachers at a school he attended," Jin had "no follow up treatment records or other similar incidents in his record" and went on to complete his bachelor's degree after the incident. *Id.* The ALJ then evaluated the opinions of two doctors regarding the mental impairment. He gave "little weight" to the assessment of Katherine Wiebe, Ph.D., who opined that based on a mental status examination and cognitive testing, Jin had "moderate to severe limitations" that would "make it difficult for him to work in a regular job." AR395–96. The ALJ also gave "little weight" to the opinion of Dr. Bob Kennedy, Psy.D., who opined that Jin's " major depressive disorder, generalized anxiety, and alcohol abuse cause moderate and marked limitations in his ability to sustain concentration and persistence [and] moderate limitation in understanding and memory, social interaction, and adaptation," due to the lack of supporting treatment records. AR396.

At step three, the ALJ concluded that Jin's impairments did not meet or medically equal the severity of one of the listed impairments in the regulations, noting that no physicians opined that they did. AR397.

Prior to making a step four determination, the ALJ found that Jin had the RFC to perform "medium work" by occasionally lifting and carrying 50 pounds and frequently lifting and carrying 25 pounds; pushing and pulling as much as he can lift and carry; sitting, standing, and walking 6 hours each in a typical 8-hour workday with normal breaks; frequently climb ramps and stairs; frequently balance stoop, kneel, crouch, and crawl; and frequently perform handling and fingering bilaterally. AR397. The ALJ found that Jin could not climb ladders, ropes, or scaffolds. *Id.* The ALJ found that while Jin's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Jin's testimony about the intensity, persistence, and limiting effects of those symptoms was not consistent with the evidence in the record. AR397–98. The ALJ gave "great weight" to the opinion of Dr. Farah M. Rana, who evaluated Jin on June 26, 2017, and

partial weight to the opinion of Dr. Emily Cohen, who evaluated Jin on July 12, 2017. AR398–99. The ALJ gave little weight to the state agency physicians Dr. Robert Mitgang and Dr. R. Dwyer. AR399. Finally, the ALJ gave little weight to the opinion of Dr. Daveena Ma, who submitted two separate opinions in May 2014 and November 2017. AR399.

Based on the RFC and the testimony of a VE, at step four the ALJ found that Jin could perform his past relevant work as a commercial cleaner and a mail handler because that work did not require performance of work-related activities precluded by the RFC determination. AR400.

Accordingly, the ALJ found that Jin was not disabled. AR400.

### B. Jin's Challenges to the ALJ's Determinations

Jin claims that the ALJ erred in five ways. First, Jin argues that the ALJ erred by finding that he did not have any severe mental impairments. PMSJ at 5–11. Second, Jin argues that the ALJ erred in discounting Jin's testimony about the intensity, persistence, and limiting effects of his impairments. *Id.* at 11–13. Third, Jin contends that the ALJ erred by rejecting the treating opinion of Dr. Ma. *Id.* at 13–15. Fourth, Jin asserts that the ALJ erred by giving great weight to Dr. Rana's opinion. *Id.* at 15–17. Finally, Jin asserts that the ALJ erred by affording only partial weight to the opinion of Dr. Cohen. *Id.* at 17–18. Based on those errors, Jin urges the Court to remand to the Commissioner for payment of benefits or, in the alternative, further proceedings. *Id.* at 18–20. The Commissioner asserts that the ALJ properly evaluated the record evidence and that substantial evidence supports the ALJ's determinations at each step of the sequential analysis. *See generally* GMSJ.

The Court addresses each argument in turn.

#### i. Analysis of Mental Impairments

First, Jin argues that the ALJ erred by finding that he had no severe mental impairments. PMSJ at 5–11. Jin argues that the ALJ went against Judge Westmore's determination that he had met the "minimal showing of severity" by the combination of the four examining opinions he offered by using "essentially the same rationale" to reject large parts of those opinions again. *Id.* The Commissioner asserts that Jin never claimed disability due to severe mental impairment in his application. GMSJ at 3–6. On the merits, the Commissioner argues that the ALJ properly

6

1  evaluated the opinions of both Dr. Wiebe and Dr. Kennedy based on Judge Westmore's remand
2  order. *Id.*

3       As an initial matter, the Court disagrees with the Commissioner that the Court should not
4  consider the ALJ's findings on mental impairments because Jin did not claim disability due to
5  mental impairments in his application. *See* GMSJ at 3. Jin raised the issues of his mental
6  impairments throughout the hearing and administrative processes, the ALJ addressed them in both
7  decisions, and Judge Westmore reversed the previous denial of benefits in part based on failure to
8  properly consider the evidence of mental impairments. This is accordingly not like cases in which
9  claimants raised potential issues on appeal for the first time, as in the case the Commissioner cites.
10 *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (statistics raised on first time on appeal
11 could not be considered because they were not raised at the administrative hearings).

12      On the merits, the Court agrees with Jin that the ALJ failed to fully heed Judge
13 Westmore's directive that Jin met the "minimal showing" necessary at step two when evaluating
14 whether impairments were severe. Judge Westmore took issue with the ALJ "assign[ing] little
15 weight to the medical opinions of every treating and examining physician, despite detailing their
16 opinions pertaining to [Jin's] limitations and then discounting them based on limited treatment
17 records." *Jin*, 2020 WL 999795, at *2. Judge Westmore stated that the weighing of evidence
18 would be more appropriate later in the analysis, and that Jin satisfied step two through the two
19 examining opinions related to his physical limitations and two examining opinions relating to his
20 mental limitations. *Id.*

21      While the ALJ did appropriately find that Jin satisfied step two of the framework through
22 the three severe physical impairments, the ALJ also found that Jin's mental impairments were not
23 severe. The ALJ's analysis of this point in the post-remand decision, including the analysis of the
24 opinions of Dr. Wiebe and Dr. Kennedy, is largely identical or paraphrased from the analysis in
25 the pre-remand decision that Judge Westmore found (1) did not support the finding that the
26 impairments were non-severe, and (2) was more appropriate later in the decision framework rather
27 than at step two. *Compare* AR395–96 (post-remand decision), *with* AR26–27 (pre-remand
28 decision). Repeating essentially the same analysis that was rejected in the previous (vacated)

decision was inconsistent with Judge Westmore's remand order and was thus improper.

As Jin recognizes in reply, errors at step two may be harmless error where the ALJ otherwise finds step two satisfied and the error is inconsequential to the ultimate issue of disability. *See Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (error at step two harmless and not a basis for remand where step two was decided in claimant's favor and all impairments (including non-severe impairments) were considered in determining RFC). But as Jin says, the ALJ failed to consider the mental limitations at all in conducting the RFC analysis. *See* AR397. The ALJ recognized that the consideration of the severity of the impairment at step two was not the same as evaluating that same impairment at steps four and five. *See* AR396–97 (limitations identified in "paragraph B" criteria at step two are "not a residual functional capacity assessment," which "requires a more detailed assessment" than the step two analysis). While the ALJ said that his RFC analysis "reflect[ed] the degree of limitation" that was found in the paragraph B analysis at step two, the RFC analysis in the decision is entirely devoid of any mention of the evidence of mental impairments. *See* AR396–97. The Court agrees with Jin that failure to expressly consider the mental impairments—even if they could be non-severe—in the residual functional capacity analysis was error requiring remand. *See Buck*, 869 F.3d 1048–49; *see also Bagby v. Comm'r of Soc. Sec.*, 606 F. App'x 888, 890 (9th Cir. 2015) (failure to include all credible limitations in RFC analysis made remand appropriate).

The ALJ's failure to heed Judge Westmore's directive in her remand order and his failure to analyze Jin's mental impairments at later steps of the analysis is alone grounds for summary judgment for Jin. But even if the ALJ's analysis occurred at later parts of the framework, the decision is wrong on the law. The Court finds that the ALJ failed to "state clear and convincing reasons that are supported by substantial evidence" for rejecting the opinions of Drs. Wiebe and Kennedy. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

The ALJ lacked clear and convincing reasons for assigning Dr. Wiebe's opinions "little weight." Dr. Wiebe found based on her examination that Jin had moderate to severe limitation in social functioning; moderate limitation in organization, judgment, and insight; and moderate limitations in ability to engage in consistent work and working with others without irritability,

8

sensitivity, argumentativeness, or suspiciousness. AR286–87. Dr. Wiebe's tiered determinations were supported by a 9-page narrative report describing her observations and Jin's responses to her questions. AR276–84. The ALJ held that her opinion had "little support" because Jin "ha[d] not received mental health treatment," was not taking psychotropic medications, and himself denied having mental health issues. AR296. But the Ninth Circuit has explicitly rejected these reasons for discounting a medical opinion about mental impairments. "[T]he fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis" for concluding that a doctor's opinion regarding a claimant's mental condition is faulty. *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) ("[I]t is common knowledge that depression is one of the most underreported illnesses in the county because those afflicted often do not recognize that their condition reflects a potentially serious mental illness."). The lack of previous mental health treatment and Jin's own denial of mental health problems are thus not clear and convincing reasons for rejecting Dr. Wiebe's thorough examination and findings.

    The ALJ's assignment of "little weight" to Dr. Kennedy's opinion is based on similar flawed reasoning. Again, the ALJ faulted Jin's failure to seek mental health treatment or "complain" of mental health symptoms. AR396. These assertions are defective for the same reasons as stated above. The ALJ also cited to isolated findings from Dr. Wiebe's opinion as reasons to give little weight to Dr. Kennedy's opinion. *Id.* (citing findings that he had "goal directed thinking, good eye contact, full orientation, no suicidal/homicidal ideation, and no visual or auditory hallucinations"). But this looks at discrete findings from Dr. Wiebe's report in isolation and fails to engage with the bulk of her report, including the findings that the Court has already determined the ALJ inappropriately rejected. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (ALJ improperly "developed [their] evidentiary basis by not fully accounting for the context or materials or all parts of the testimony and reports"). The ALJ thus lacked clear and convincing reasons for rejecting Dr. Kennedy's opinion.

    Because the ALJ failed to fully heed Judge Westmore's order and failed to provide clear and convincing reasons for assigning little weight to the opinions of Drs. Wiebe and Kennedy, Jin

9

is GRANTED summary judgment on this issue.

### ii. Treatment of Doctors' Opinions

Jin next objects to the ALJ's treatment of the opinions of Drs. Daveena Ma, Farah M. Rana, and Emily Cohen in the context of the RFC. The Court examines the ALJ's treatment of each individual doctor.

#### a. Dr. Ma

Jin first objects to the ALJ's treatment of the opinion of Dr. Daveena Ma, a treating doctor whose opinion the ALJ afforded "little weight." PMSJ at 13–15. Jin also contends that to the extent the ALJ found ambiguities in Dr. Ma's assessment, the ALJ was required to develop the record further by contacting Dr. Ma. *Id.* at 15. The Commissioner says that the ALJ properly discounted Dr. Ma's opinion because it was not supported by the medical evidence and that the ALJ was not required to further develop the record. GMSJ at 9–10.

Doctors' opinions are given different weights depending on the extent of the interaction that doctor has with the claimant.[2] "The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." *Reddick*, 157 F.3d at 725 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." *Id.* If a treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence in the record for rejecting the opinion. *Id.*

Dr. Ma issued two separate opinions regarding Jin in May 2014 (AR292–94) and November 2017 (AR298–301). In the May 2014 opinion, Dr. Ma opined that while Jin was "not limited physically for <u>all</u> work," he was "not able to do heavy manual labor." AR293. Dr. Ma stated that Jin could frequently lift only 10 pounds and stand or walk less than two hours in an

---

[2] Because Jin's SSI application was filed before March 27, 2017, new regulations governing the evaluation of medical evidence that do away with the hierarchy-based analysis do not apply to his claim. *See Woods v. Kijakazi*, 32 F.4th 785, 789–92 (9th Cir. 2022).

eight-hour workday. AR294. Dr. Ma also said that Jin should be referred for an evaluation of mental health conditions. *Id.* In the November 2017 opinion, Dr. Ma echoed the opinions of her May 2014 report and additionally opined that Jin's impairments would severely interfere with his ability to "attend, concentrate, and maintain pace" on work activities during a typical day. AR301.

    The ALJ found the record as a whole did not support Dr. Ma's assessment and assigned it little weight. AR399. The ALJ stated that the whole record showed that Jin "has no less than medium limitations and does not support limitation of light/sedentary [RFC]." *Id.* The ALJ further stated that Dr. Ma's opinion "do[es] not show a nexus between the diagnosis of diabetes and such significant limitations" because Dr. Ma "consistently found that [Jin]'s diabetes was uncomplicated and her treatment notes make no mention of fatigue or other symptoms alleged by [Jin] in his disability report." *Id.* The ALJ also noted that Dr. Ma did not cite any objective findings or explanation to support her findings. *Id.*

    The Court finds that the ALJ provided specific and legitimate reasons for discounting Dr. Ma's opinion, notwithstanding that she is a treating source. Dr. Ma's opinions on the level of limitations Jin experienced conflicted with those of Dr. Rana and Dr. Cohen. "When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapeyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012) (ALJ may "permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions") (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). Dr. Ma's opinions are contained on two brief check-the-box forms and are not supported by any specific findings other than a generic description of Jin's diabetes diagnosis. *See* AR293–94, 299–301. Indeed, the November 2017 opinion leaves blank multiple areas to explain why medical findings support the check-the-box levels of impairments. *See* AR300–01 (leaving blank two areas that ask, "What medical findings support the limitations described above?" and one area that asks, "How are these physical functions affected?"). Because Dr. Ma's opinion lacked explanations of how the medical record supports the limitations Dr. Ma opines that Jin is subject to, the ALJ did not need to accept that opinion at face value. The ALJ's articulation of this justification and his

11

citation to treatment notes constitute specific and legitimate reasons for assigning little weight to Dr. Ma's opinion.

The Court also finds that there was no duty for the ALJ to further develop the record. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence of when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Rejection of Dr. Ma's opinion because it was not supported by citation to medical findings did not trigger that duty. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("Rejection of the treating physician's opinion on ability to perform any remunerative work does not by itself trigger a duty to contact the physician for more explanation."). Here, the record contains multiple doctors' opinions and a multitude of treatment records. Jin identifies no ambiguity in the records or the opinions—aside from blank fields on the opinion forms, which Dr. Ma herself declined to fill out—that would compel the ALJ to seek additional information.

The Court thus finds no error in the ALJ's treatment of Dr. Ma's opinion.

### b. Dr. Rana

Jin next objects that the ALJ gave more weight to the opinion of Dr. Farah Rana than the ALJ gave to Dr. Ma. PMSJ at 15–17. Jin makes no specific objection to the substance of the ALJ's treatment of Dr. Rana, only commenting that Dr. Rana is not entitled to the same deference that a treating source like Dr. Ma is. *Id.* at 15–16. Jin further contends that the ALJ could not have relied on Dr. Rana's narrative report because it is not signed as required by 20 C.F.R. § 416.919n(e). *Id.* at 16–17. The Commissioner says that the ALJ could still permissibly give great weight to a consultative examiner notwithstanding the single examination of Jin and that there is no evidence that the report was improperly signed. GMSJ at 10–11.

The Court agrees with the Commissioner that the ALJ did not improperly assign great weight to Dr. Rana's opinion. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As the Court has already found, the ALJ provided specific and legitimate reasons for assigning

little weight to Dr. Ma's opinions because they were brief and conclusory. In contrast, while Dr. Rana also used a check-the-boxes form to indicate her ultimate assessment of Jin's limitations, the form was accompanied by a narrative evaluation of Jin in which Dr. Rana outlines her observations from the physical examination of Jin. The ALJ was entitled to assign different weight to the two opinions based on this difference. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than those that are not.").

The Court also agrees with the Commissioner that the ALJ properly rejected the challenge to the signature on Dr. Rana's report. It is true that "[a]ll consultative examination reports [must] be personally reviewed and signed by the medical source who actually performed the examination" and that "[a] rubber stamp signature of a medical source or the medical source's signature entered by any other person is not acceptable." 20 C.F.R. § 416.919n(e). But as Jin recognizes, the narrative report bears a scan of Dr. Rana's wet signature. *See* AR268. The Social Security Administration's Program Operations Manual System, which the Ninth Circuit has found to be persuasive authority on the proper mechanism for adjudicating Social Security applications, *see Buck*, 869 F.3d at 1050–51 (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006)), explicitly permits use of "facsimiles, photocopies, or scanned images of written ('wet') signatures" to satisfy the signature requirement in § 416.919n(e). POMS § DI 22501.015 ¶ C.1 (available at https://secure.ssa.gov/poms.nsf/lnx/0422510015). Other than Jin's conjecture regarding handwritten numbers on the pages and a difference in dates, there is no evidence that the scan of the wet signature was not applied by Dr. Rana (just as the undersigned applies a scan of her wet signature to orders of this Court). The Court finds that the ALJ properly overruled the objection to Dr. Rana's signature.

The Court thus rejects Jin's arguments and finds no error in the ALJ's treatment of Dr. Rana's opinion.

### c. Dr. Cohen

Jin additionally argues that the ALJ erred in his treatment of the opinion of Dr. Cohen, an examining physician. Jin says that the ALJ failed to articulate why he gave only partial weight to

Dr. Cohen's opinion on the limitations on Jin's ability to lift and carry items. PMSJ at 17–18. The Commissioner contends that the ALJ properly discounted some of Dr. Cohen's opinions as unsupported by her own examination notes. GMSJ at 11–12.

Of the physicians examining Jin's diabetes issues, Dr. Cohen's report is the most detailed. AR288–91. Dr. Cohen recounts Jin's history of present illness and medical history and recounts the observations from her examination. *Id.* Dr. Cohen noted that Jin had full range of motion in his shoulders, elbows, wrists/hands, hips, knees, and ankles/feet. AR290. Dr. Cohen opined that Jin could lift and carry 10 pounds frequently, twenty pounds occasionally, and fifty pounds rarely, and that he could "perform push/pull motions with his bilateral upper and lower extremities without restriction." AR291. Dr. Cohen also found that "[h]is sensation is intact to light touch" and that he had "5/5 muscle strength in all major muscle groups of upper and lower extremity." *Id.* After recounting Dr. Cohen's findings, the ALJ assigned her opinion "partial weight," finding that "the limitation on lifting and carrying is not supported even by her own physical examination. (E.g., full range of motion, normal motor strength, intact sensation.)" AR399.

"As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (quoting *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

The Court finds that the ALJ did not err in evaluating Dr. Cohen's report. The ALJ provided "specific and legitimate" reasons for rejecting Dr. Cohen's opinion on the limitations on Jin's ability to lift and carry. The ALJ found that Dr. Cohen's finding that Jin could only lift twenty pounds occasionally and fifty pounds rarely was not supported by her own treating notes, which stated that Jin had "5/5 muscle strength" in upper and lower extremities, full motor manipulation in his hands, and full range of motion in all relevant portions of his body. AR399 (citing AR291). Importantly, the ALJ did not discount all of Dr. Cohen's opinion, but instead

14

assigned it "partial weight" after holding that the opinion on limited lifting and carrying was not supported. The ALJ's citation to the contradictions between Dr. Cohen's physical observations and her opinion on Jin's limited ability to carry and lift constitutes specific and legitimate reasons for partially discounting her opinion.

Contrary to Jin's argument otherwise, by affording partial weight to Dr. Cohen's opinion, the ALJ was not impermissibly "play[ing] doctor" or "interpret[ing] raw medical data in functional terms." PMSJ at 18 (citing *Manso-Pizarro v. Sec. of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996), and *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). The two out-of-circuit cases Jin cites do not prohibit assigning partial weight to a medical opinion after the ALJ has identified contradictions within a doctor's report. The ALJ examined Dr. Cohen's physical findings, identified substantial evidence that supported partially discounting her opinion on the limitations on Jin's ability to lift and carry objects, and assigned her opinion partial weight as a whole. The Court finds no error in the ALJ's treatment of Dr. Cohen's opinion.

### iii.    Testimony re: Intensity, Persistence, and Limiting Effects of Impairments

Jin also contends that the ALJ erred when he rejected Jin's testimony of the intensity, persistence, and limiting effects of his impairments. PMSJ at 11–13. Jin says the ALJ failed to offer clear and convincing reasons for rejecting the testimony. *Id.* at 12 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). The Commissioner contends that the ALJ properly discounted Jin's subjective testimony. GMSJ at 6–8.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014. The ALJ held that Jin's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, AR398, and the Commissioner does not contest this statement. "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citation omitted). Neither

15

the ALJ nor the Commissioner point to any evidence of malingering. The issue then becomes whether the ALJ offered "specific, clear and convincing reasons" for rejecting Jin's testimony.

The ALJ found that Jin's statements about the "intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR398. Because the Court has found that the ALJ's evaluation of some doctors' opinions was flawed, *see supra* Sections III.B.i, the ALJ's evaluation of Jin's credibility did not fully account for all of the medical opinions and evidence in the record. On remand, the ALJ must reevaluate Jin's credibility based on a proper consideration of the doctors' opinions as outlined in this Order.

\*   \*   \*

The only remaining question is whether the Court should remand for further proceedings or for payment of benefits to Jin. A remand for an immediate award of benefits may be appropriate in the "rare circumstances" in which the following three requirements are met: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Brown-Hunter*, 806 F.3d at 495 (internal quotation marks and citation omitted). Even if all three requirements are satisfied, the Court "retain[s] flexibility in determining the appropriate remedy." *Id.* (internal quotation marks and citation omitted).

The Court finds that remand for further proceedings is appropriate. The first factor is met here, as the ALJ failed to properly analyze Jin's claims of mental impairments. The error at step two that improperly discounted Jin's claimed mental impairments pervades the remaining analysis because the ALJ gave no consideration of the effect of the mental impairments at later stages of the analysis. The second factor is not met, however, because further proceedings are necessary so that Jin's mental impairments may be considered in determining the severity of impairments and formulating an appropriate RFC. It is unclear whether the third factor is met, because it is unclear on this record what an appropriate RFC would look like and whether there are jobs in the economy

for an individual with such an RFC. The Court will thus remand for further proceedings.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Jin's motion for summary judgment is GRANTED IN PART and DENIED IN PART and the Commissioner's motion for summary judgment is DENIED. The denial of benefits is REVERSED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Order. On remand, the ALJ must consider Jin's claimed mental impairments at steps four and five of the analysis. Judgment will issue.

Dated:  July 28, 2022

_____
BETH LABSON FREEMAN
United States District Judge